IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PALMETTO BLUFF INVESTMENTS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | No. 9:23-cv-05263-DCN |
| vs. | ) ) ) | **ORDER** |
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY, *a Georgia corporation*, and ACE FIRE UNDERWRITERS INSURANCE CO., *a Pennsylvania corporation*, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the court on plaintiff Palmetto Bluff Investments, LLC's ("PBI") motion to voluntarily dismiss, ECF No. 45. For the reasons set forth below, the court grants the motion to dismiss without prejudice in accordance with the instructions herein.

## I.  BACKGROUND

PBI is a South Carolina limited liability company that, through various subsidiaries, owns Palmetto Bluff—a residential and recreational preserve in Bluffton, South Carolina offering hotels, golf, restaurants, residences, and recreational facilities among other amenities. ECF No. 1, Compl. ¶ 1. Palmetto Bluff only allows homes situated in "designated rental areas" to be rented to third parties on a short-term basis. Id. ¶ 2. The increasing popularity of short-term rentals led to overcrowding and compaction issues with Palmetto Bluff facilities. Id. To alleviate this strain, Palmetto Bluff's board began to discuss limiting short-term renters' access to Palmetto Bluff amenities. Id.

1

Some homeowners in Palmetto Bluff's designated rental areas opposed this change because it would diminish the desirability of their properties as rentals. See id. In July of 2020, the interested homeowners sent a letter through counsel to PBI and other affiliated entities stating their intent to discuss good faith ways to resolve conflicts arising from short-term rental amenity access but left open the possibility of legal action if a resolution could not be reached. ECF No. 1-3.

By March of 2021, owing to the increasing threat of litigation with dissatisfied homeowners, PBI submitted a claim under its Directors & Officers Liability Insurance Policy (the "D&O Policy") issued by defendant Westchester Surplus Lines Insurance Company ("Westchester"). Compl. ¶ 3. PBI also submitted a claim under its Professional Liability Insurance Policy (the "PL Policy") issued by defendant Ace Fire Underwriters Insurance Company ("Ace") (together, with Westchester, "Defendants"). Id. Defendants denied coverage under both policies on various grounds. Id. ¶¶ 4–5.

On April 12, 2022, the dissatisfied homeowners brought suit in South Carolina state court (the "underlying action") to prevent changes to Palmetto Bluff's short-term renter amenity access policies, naming several PBI subsidiaries and PBI affiliated individuals as defendants. Id. ¶ 9.

PBI filed a complaint in this court asserting diversity jurisdiction on November 20, 2023, seeking a declaratory judgment that either Westchester or Ace must indemnify and defend PBI and other PBI affiliated insureds in the underlying action pursuant to either the D&O Policy or the PL Policy. Id. ¶¶ 10–11, 15. The parties had largely

2

completed discovery by April 7, 2025.[1]  See ECF No. 31.  Ace and Westchester filed motions for summary judgment on May 9, 2025.  ECF Nos. 37, 38.

PBI filed a motion to voluntarily dismiss this suit without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) on July 14, 2025.  ECF No. 45.  PBI seeks dismissal based upon recently discovered information pertaining to its own citizenship. Id. ¶¶ 6–7.  More specifically, PBI asserts that the court lacks subject-matter jurisdiction because the parties are not completely diverse.  Id.  Defendants responded jointly in opposition on August 8, 2025, seeking jurisdictional discovery to verify PBI's claims with regard to its own citizenship.  ECF No. 50 at 3.  Should the court find that jurisdiction is lacking, Defendants alternatively request that the court impose attorneys' fees and costs as a condition to voluntary dismissal.  Id. at 9.  PBI replied on August 8, 2025.  ECF No. 51.

PBI re-filed this action in the Beaufort County Court of Common Pleas (the "state court action") on May 16, 2025.  Palmetto Bluff Invs., LLC v. Westchester Surplus Lines Ins. Co. et al., No. 2025-CP-07-01256 (Beaufort Cnty. Ct. C.P. May 16, 2025).  The parties informed the court via email on December 11, 2025 that they had mutually agreed to a stay of the state court action pending resolution of PBI's motion to voluntarily dismiss.

The court held a hearing on PBI's motion to voluntarily dismiss on October 16, 2025 and requested that Defendants submit their attorneys' fees and costs incurred in this

---

[1] The court has delayed ruling on the only pending discovery motion, PBI's motion to compel, ECF No. 36, due to the jurisdictional issue raised in PBI's motion to voluntarily dismiss.

matter since PBI first informed them of the purported jurisdictional defect.[2] See ECF No. 53. Defendants then submitted an affidavit stating their attorneys' fees and costs as a single, combined figure on October 24, 2025. ECF No. 54.

The court requested Defendants provide an itemization of their costs and fees, to include billing entries for the attorneys' fees sought, via email on October 28, 2025. In this email, the court informed Defendants that this itemization could be submitted in camera due to privilege concerns. In a subsequent email, the court informed the parties that it would review Defendants' submission in camera before informing the parties as to how it would proceed. On January 1, 2026, the court issued an order requiring Defendants to file their itemization of costs and fees with any privileged or otherwise confidential information redacted to allow PBI the opportunity to file objections. ECF No. 59. Defendants filed their redacted itemization on January 12, 2026, ECF No. 60, and PBI responded with objections on January 19, 2026, ECF No. 64. As such, this motion is fully briefed and now ripe for the court's review.

## II.  STANDARD

### A.  Voluntary Dismissal

Rule 41(a)(1) provides that a plaintiff may dismiss an action as a matter of course (1) by filing a notice before the opposing party serves an answer or motion for summary judgment, or (2) by the parties entering into a stipulation of dismissal. Fed. R. Civ. P. 41(a)(1). Rule 41(a)(2) provides that absent a voluntary dismissal under Rule 41(a)(1),

---

[2] Defendants were first informed of the jurisdictional defect on July 11, 2025. ECF No. 50 at 3; see also ECF No. 45 ¶ 11.

the plaintiff must request a court order to dismiss the action, which may be granted "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

### B. Subject-Matter Jurisdiction

The district court must "engage in sufficient pretrial factual and legal determinations to 'satisfy itself of its authority to hear the case before trial.' " Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th Cir. 2004) (quoting Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1027–28 (D.C. Cir. 1997)). The district court is responsible for weighing the evidence pertaining to jurisdiction, and—unlike on a Rule 12(b)(6) motion to dismiss—this evidence is not entitled to a presumption of truth. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When resolving disputed jurisdictional facts, the court may consider "evidence outside the pleadings, such as affidavits." Mundo-Violente v. Kerry, 180 F. Supp. 3d 442, 448 (W.D. Va. 2016) (citing United States v. Jadhav, 555 F.3d 337, 348 (4th Cir. 2009)).

### III.   DISCUSSION

The court first addresses PBI's motion to voluntarily dismiss on the ground that subject-matter jurisdiction is lacking due to the absence of complete diversity between the parties. Concluding that jurisdiction is lacking, the court then turns to Defendants' request to impose payment of attorneys' fees and costs as a condition to voluntary dismissal.

### A. Diversity of Citizenship

Federal courts are not courts of general jurisdiction; they are only able to adjudicate suits where jurisdiction is authorized under Article III of the Constitution or statutes enacted by Congress pursuant to Article III. Bender v. Williamsport Area Sch.

Dist., 475 U.S. 534, 541 (1986).  This jurisdictional requirement is known as subject-matter jurisdiction.  See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004).  "Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties."  Id. (citing United States v. Cotton, 535 U.S. 625, 630 (2002)).  Accordingly, a party may raise the issue of subject-matter jurisdiction at any point during the proceedings.  Brickwood Contractors, 369 F.3d at 390.  If a federal court determines that subject-matter jurisdiction is lacking, then the case must be dismissed because the court would not have the "statutory or constitutional power to adjudicate the case."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis in original).

In its complaint, PBI stated that jurisdiction was proper in this court pursuant to 28 U.S.C. § 1332(a).  Compl. ¶ 15.  Commonly termed "diversity jurisdiction," Section 1332(a) permits federal courts to hear cases between "citizens of different States[ ]" if the amount in controversy in the suit "exceeds the sum or value of $75,000[.]"  28 U.S.C. § 1332(a).  To be citizens of different states under Section 1332(a), the parties must be completely diverse, meaning "no plaintiff may share a citizenship with any defendant."  Navy Fed. Credit Union v. LTD Fin. Servs., LP, 972 F.3d 344, 352 (4th Cir. 2020).  Thus, to ascertain whether jurisdiction exists under Section 1332(a), "a federal court must determine and compare the citizenship(s) of all plaintiffs and all defendants[.]"  Id. at 353.

For diversity purposes, a natural person is considered a citizen of the state in which they are domiciled.  Johnson v. Advance Am., 549 F.3d 932, 937 n.2 (4th Cir. 2008).  To be domiciled in a particular state, a person must be physically present in that

6

state and intend to make that state their home.  Id.  A corporation is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]"  28 U.S.C. § 1332(c)(1).

However, a limited liability company ("LLC")—being neither a natural person nor corporation—derives its citizenship from that of its members.  Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011).  When an LLC's membership comprises another entity that is not a corporation nor natural person (i.e., the LLC's members are also LLCs or partnerships), then the LLC will have the citizenship of the member entity's members or partners that are natural persons or corporations.  Smiley v. Forcepoint Federal LLC, 2018 WL 3631885, *2 (E.D. Va. Jul. 31, 2018); see also Americold Realty Trust v. Conagra Foods, Inc., 577 U.S. 378, 379 (2016) ("While humans and corporations can assert their own citizenship, other entities take the citizenship of their members.").  And, in the case of multiple layers of subsequent entities that are neither corporations nor natural persons, the court must discern the members or partners of each subsequent entity until it can ascertain all corporate entities or natural persons in the chain of ownership to fully assess an LLC's citizenship.  Smiley, 2018 WL 3631885, *2; see also Jennings v. HCR ManorCare Inc., 901 F. Supp. 2d 649, 651 (D.S.C. 2012) ("[A]n LLC's members' citizenship must be traced through however many layers of members there may be.").  The citizenship of the parties in a diversity action is determined with reference to the facts as they existed at the time of filing.  Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 569–70 (2004).  With these principles in mind, the court turns to assess its jurisdiction.

Neither party disputes that defendant Westchester is a Georgia corporation. Compl. ¶ 13; ECF No. 11 ¶ 13. PBI recently discovered information indicating that it is also a citizen of Georgia for diversity purposes. ECF No. 45 ¶¶ 6–7. PBI attaches the declaration of Jordan Phillips ("Phillips")[3] to its motion in which Phillips traces the membership and partnership interests of PBI and its subsidiaries to arrive at a Georgia citizen whose citizenship is attributable to PBI. See ECF No. 45-1. Phillips first states that PBI is an LLC with only one member that is a limited partnership: HP-SSP Holdings, LP. Id. ¶ 2. HP-SSP Holdings, LP has two "member" entities: (1) SSP PB Investors, LLC, and (2) HP PB Co-Invest, LP. Id. SSP PB Investors, LLC traces its ownership back to more than 200 accredited member-investors, including LLCs, trusts, and limited partnerships. Id. ¶ 3. One of the member-investors in SSP PB Investors, LLC is a limited partnership identified as SSP GP Fund I, LP. Id. ¶ 4. Finally, Phillips identifies Paxton Griffin ("Griffin") as one of the investors in SSP GP Fund I, LP.[4] Id. Phillips states that Griffin is "currently a resident and citizen of the state of Georgia and was [a citizen of the state of Georgia] as of the time of filing the Complaint in this action . . . ." Id.

Griffin's citizenship is attributable to PBI because the chain of ownership interests between PBI and Paxton only comprises limited partnerships and LLCs, and

---

[3] Phillips is a managing partner in South Street Partners NC, LLC, which through its membership in certain limited partnerships and LLCs, is invested in HP-SSP Holdings, LP. ECF No. 45-1 ¶ 1. HP-SSP Holdings, LP is the sole member and manager of PBI. Id. ¶ 2.

[4] Griffin's citizenship is attributable to SSP GP Fund I, LP regardless of his status as a limited or general partner in that entity. See Carden v. Arkoma Assocs., 494 U.S. 185, 195–96 (1990) (holding that the citizenship of both limited and general partners in a limited partnership should be considered for purposes of determining whether diversity jurisdiction exists).

Griffin is the first natural person or corporate entity in that line of ownership interests. See Smiley, 2018 WL 3631885, *2.  Therefore, if Phillips's affidavit is accurate, PBI and Westchester are both citizens of Georgia for purposes of diversity jurisdiction. See Navy Fed. Credit Union, 972 F.3d at 353.  When the plaintiff (PBI) and defendant (Westchester) are citizens of the same state, a federal court does not have subject-matter jurisdiction over the suit because the parties are not completely diverse.  See Martinez v. Duke Energy Corp., 130 Fed. Appx. 629, 635 (4th Cir. 2005) (affirming district court's decision that addition of non-diverse party to a suit destroyed diversity jurisdiction).

Defendants urge the court to "not accept the representations made by PBI in its [m]otion at face value[ ]" and request jurisdictional discovery to assess the validity of PBI's claims.[5]  ECF No. 50 at 2.  Defendants submit that Phillips's declaration alone is inadequate because it fails to address how PBI came to realize Griffin was a Georgia citizen and contains no documentary evidence to support the statements in the declaration.  Id. at 5.  PBI views the requested discovery as "wasteful and unnecessary" in light of Phillips's affidavit.  ECF No. 51 at 2.

The court agrees with PBI that jurisdictional discovery is not appropriate because Defendants have not provided the court with any concrete reason to question the credibility of Phillips's affidavit.  See ECF No. 50 at 5–9.  The court is thus satisfied that Phillips's affidavit is credible and will not order jurisdictional discovery.  See Mylan Labs. Inc. v. Akzo N.V., 2 F.3d 56, 64 (4th Cir. 1993) (noting district court's broad

---

[5] Defendants provide seven (7) proposed discovery requests in their response in opposition (with one request containing another seven (7) sub-parts) and also seek to depose Griffin in order to verify his citizenship and the ownership interests linking him to PBI. ECF No. 50 at 7–8.

discretion in resolving discovery issues, including whether to grant jurisdictional

discovery); Lu v. Ariabin, 334 F. Appx. 594, 594–95 (4th Cir. 2009) (affirming district

court's denial of motion for jurisdictional discovery when "deciding factual issue of

Defendant's citizenship on the parties' declarations."); Fernandez v. Groundworks

Operations, LLC, 2023 WL 1110942, at *3 (D.S.C. Jan. 30, 2023) (dismissing suit for

lack of subject-matter jurisdiction on the basis of affidavit indicating that several of

LLC's members were non-diverse parties).  As such, the court finds that it lacks subject-

matter jurisdiction over this suit due to the absence of complete diversity between the

parties.  Supra p. 9.   Having determined that jurisdiction is lacking, the court will grant

PBI's motion to voluntarily dismiss.  See Citizens for a Better Env't, 523 U.S. at 89.  The

court now turns to whether Defendants should be awarded attorneys' fees and costs as a

condition to granting the motion without prejudice.

### B.  Request for Attorneys' Fees and Costs as Condition to Voluntary Dismissal

Defendants seek an award of their attorneys' fees and costs as a condition to the

court granting PBI's motion to voluntarily dismiss without prejudice.  ECF No. 50 at 10.

Rule 41(a)(2) allows dismissal "on terms that the court considers proper."  Fed. R. Civ. P.

41(a)(2); see also Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987) (noting the

district court's authority "to impose conditions on voluntary dismissal" under Rule

41(a)(2)).  Even when an action is dismissed for lack of jurisdiction, the court retains the

authority to award costs and fees.  Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 395

(1990) (recognizing that "a federal court may consider collateral issues after an action is

no longer pending[ ]" including "costs after an action is dismissed for want of

jurisdiction."); see also 28 U.S.C. § 1447(c) (providing that an order remanding a case for

10

lack of subject-matter jurisdiction "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").

However, the payment of another party's costs and fees as a condition to voluntary dismissal is not automatic. See Davis, 819 F.2d at 1273, 1276. Rather, the remedy serves "to obviate any prejudice to defendants which may . . . result from dismissal without prejudice." Id. at 1273. The "inconvenience and resources expended on the litigation of [a] plaintiff's action in federal court[ ]" constitutes a form of prejudice to a defendant. Davis, 819 F.2d at 1276; see also Best Indus., Inc. v. CIS BIO Intern., 1998 WL 39383, at *2 (4th Cir. Feb. 2, 1998) ("A court may condition a voluntary dismissal without prejudice on the payment of the nonmoving party's attorneys' fees and costs in the litigation."). As a result, costs incurred in the federal litigation should be imposed as a condition to voluntary dismissal "as a matter of course in most cases." Davis, 819 F.2d at 1276.

An award of attorneys' fees, however, is only appropriate to the extent that a defendant's fees result from work that will not be transferable to re-filed litigation or when a plaintiff seeks voluntary dismissal in bad faith. See Davis, 819 F.3d at 1276 (reversing fee award when plaintiff had not acted in bad faith and "federal discovery will be useable in the state forum."); see also 9 Charles A. Wright & Aurthur R. Miller, Federal Practice and Procedure, § 2366 (4th ed. 2025) (explaining that in cases of voluntary dismissal, the district court usually "require[s] that the plaintiff pay some or all of the defendant's litigation costs[ ]" but noting that "the terms of the practice are not uniform and are highly dependent on the circumstances[,] . . . especially whether some of the work done by the defendant might be useful in subsequent litigation."); Best Indus.

11

1998 WL 39383, at *4 ("[A]ttorneys' fees as a condition for such a dismissal may only be awarded for work that could not be used again in a future suit.").

Defendants have provided the court with an itemization of their costs and fees incurred in this matter since first learning of the jurisdictional defect, including the billing entries of Defendants' counsel. ECF No. 60-1. Defendants seek costs and fees associated with: (1) expenses incurred in opposing PBI's motion to voluntarily dismiss; and (2) expenses incurred in filing a motion to dismiss and/or stay the state court action. Id. ¶ 5. The total amount of attorneys' fees and costs sought comes to $45,909.00 and $1,291.21, respectively.

PBI emphasizes that it seeks voluntary dismissal in good faith, ECF No. 64 ¶ 11, recognizing that "only a [c]ourt with appropriate jurisdiction may properly adjudicate this action to a final judgment." ECF No. 51 at 1. PBI further emphasizes that it does not wish to "delay prosecution of its insurance coverage claims" and hopes that "the state court will pick up th[e] case exactly where it currently sits by addressing the outstanding discovery motion and Defendants' motion for summary judgment. Id. at 1, 3. While the court does not find that PBI has acted in bad faith, attorneys' fees may be imposed as a condition to voluntary dismissal when the plaintiff has acted in bad faith or for litigation costs that will not be transferable to subsequent litigation. See Davis, 819 F.3d at 1276; Best Indus., 1998 WL 39383 at *4.

The court also notes that PBI had an obligation to fully investigate its own citizenship (and the law pertaining to the citizenship of LLCs for purposes of jurisdiction) before asserting the court had diversity jurisdiction in its complaint. See Compl. ¶¶ 15–16; Fed. R. Civ. P. 11(b)(3) (providing that "factual contentions" in a pleading

12

must have "evidentiary support" or "likely have evidentiary support after a reasonable opportunity for further investigation"); Fed. R. Civ. P. 11(b)(2) (providing that legal contentions in a pleading must be "warranted by existing law").  PBI neglected this obligation for nearly two (2) years, and this neglect is not cured simply because it appears to be a genuine oversight on its part.  Cf. Caufield v. EMC Mortg. Corp., 803 F. Supp. 2d 519, 529–30 (S.D.W. Va. 2011) (finding that "defendant was or should have been aware of Fourth Circuit's standard for removal" and granting plaintiff's request for fees when defendant's argument regarding amount in controversy was without "factual basis [i]n the record") (emphasis added); compare Compl. (filed October 10, 2023), with ECF No. 45 (PBI's motion to voluntarily dismiss filed on July 14, 2025).

PBI also submits that Defendants needlessly opposed its motion to voluntarily dismiss because Defendants could have simply agreed with its "correct" conclusion that jurisdiction was lacking and consented to dismissal.  ECF No. 64 ¶ 19.  The court, however, does not fault Defendants for opposing PBI's motion because they have litigated in this forum for over two (2) years and filed motions for summary judgment, raising the prospect of ending this litigation in their favor altogether.  See ECF Nos. 37, 38.  Moreover, because PBI waited almost two (2) years to fully investigate its own citizenship, Defendants have not acted unreasonably in declining to accept PBI's representations as to its citizenship at face value, even if the court deems those representations to be credible.

PBI further objects to the portion of Defendants' fees incurred in filing a motion to dismiss and/or stay the state court action because it did not object such a stay.  ECF No. 64 ¶ 29.  However, Defendants' counsel emailed counsel for PBI on August 4, 2025,

requesting that PBI consent to stay Defendants' deadline to respond to PBI's complaint in the state court action until this court ruled on the jurisdictional issue. ECF No. 60-1 ¶ 7. PBI did not respond to this email. See id.; ECF No. 64 ¶ 29. PBI views its non-response as justified because its reply brief in support of its motion to voluntarily dismiss stated that it did not object to a stay when Defendants' deadline to respond to PBI's state court complaint had not yet passed. ECF No. 64 ¶ 30. In response, Defendants explain that PBI's reply brief was filed on Friday, August 22, 2025, just one business day before their response was due in the state court action on the following Monday. ECF No. 60-1 ¶ 7. As such, PBI's objection is without merit. Having addressed these generalized objections, the court finds that payment of Defendants' attorneys' fees and costs as a condition to voluntary dismissal is warranted under these circumstances. The court will now determine the amount that PBI will be required to pay as a condition to voluntary dismissal. The court begins with attorneys' fees before discussing costs.

### 1. Determining the Award

As discussed above, any fee awarded as a condition to voluntary dismissal must be attributable to work performed that will not be transferable to subsequent litigation. See Davis, 819 F.3d at 1276; Best Indus., 1998 WL 39383 at *4. The court has reviewed Defendants' itemized billing entries and is satisfied that each entry relates to work that will not be of service in the state court action. See ECF Nos. 60-2, 60-3, 60-4. These billing entries total to $45,909.00 in attorneys' fees.

PBI urges the court to consider the factors set forth in Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) to ensure that any fee condition is reasonable, even if the court is not required to do so in the context of fees imposed as a condition to

14

voluntary dismissal.  ECF No. 64 ¶ 14 (citing <u>Keystone NE, Inc. v. Keystone Retaining Wall Sys., LLC</u>, 2014 WL 4198818, at *3 n.3 (D.S.C. Aug. 22, 2014) (giving brief consideration to <u>Barber</u> factors, via a footnote, when determining amount of fee award imposed due to another party's failure to attend a deposition)).  Because PBI has provided the court with detailed objections to Defendants' billing entries, the court will consider the relevant <u>Barber</u> factors and reduce the award accordingly.  <u>Cf.</u> <u>Victor Stanley, Inc. v. Creative Pipe, Inc.</u>, 2011 WL 2552472, at *4 (D. Md. Jan. 24, 2011), <u>report and recommendation adopted</u>, 2011 WL 13308409 (D. Md. June 15, 2011) (noting that "it is not the Court's obligation to undertake [the] time-consuming task" of reviewing a party's billing records, particularly when the opposing party "did not themselves view it as necessary to do so").  The court considers the following <u>Barber</u> factors to be relevant to the instant fee determination and discusses each in turn: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to perform the legal services rendered; (4) the customary fee for like work; and (5) attorneys' fee awards in similar cases.  <u>See</u> 577 F.2d at 226 n.28

### a.  Time and Labor Expended

First, the court considers counsel's time and labor expended to ensure a reasonable fee award.  <u>Barber</u>, 577 F.2d at 226 n.28.  PBI primarily objects to Defendants' fee request on the ground that it is "replete with excessive, duplicative, or unnecessary work[,]" favoring a reduction in any fee condition imposed.  <u>See</u> ECF No. 64 ¶ 18.

A party may not recover fees for excessive, redundant, or unnecessary hours.  <u>Johnson v. Hugo's Skateway</u>, 949 F.2d 1338, 1352–53 (4th Cir. 1991), <u>on</u>

15

reh'g, 974 F.2d 1408 (4th Cir. 1992).  The Fourth Circuit mandates that district courts remain "sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney," as "[g]eneralized billing by multiple attorneys on a large case often produces unacceptable duplication." Rum Creek Coal Sales, Inc v. Caperton, 31 F.3d 169, 180 (4th Cir. 1994).  Courts in this district have found the costs associated with multiple attorneys attending depositions or mediations to be unreasonable without an adequate explanation. See, e.g., Morris v. Bland, 2015 WL 12910631, at *4 (D.S.C. Jan. 15, 2015) (finding that the party seeking fees had not explained why multiple attorneys were necessary at depositions and thus had not met its burden of showing the reasonableness of requested fee award); Pelczynski v. Orange Lake Country Club, Inc., 2014 WL 2095173, at *7 (D.S.C. May 20, 2014) (subtracting 8.4 hours from fee request when moving party sought to recover attorneys' fees for three attorneys attending a mediation).

PBI argues that Defendants' billing entries reflect unnecessary or duplicative work for several reasons. See ECF No. 64 at ¶¶ 22–33.  It notes, for example, that Defendants have employed five (5) attorneys to work on this matter. Id. ¶ 22.  PBI further observes that three (3) of Defendants' attorneys billed time for attending a telephonic status conference with the court and two attorneys billed time for travel to the October 16, 2025 hearing. Id. ¶ 25 (citing ECF No. 60-5 at 3–4).

PBI also calculates that a single attorney for Defendants spent forty-eight (48) minutes reading a single email on July 11, 2025, and another attorney read PBI's state court complaint twice, billing 3.8 hours for this task. ECF No. 64 ¶ 26 (citing ECF No. 60-2 at 4, 6, 8).  In addition, one attorney for Defendants billed 14.6 hours of legal

16

research to draft Defendants' response in opposition to PBI's motion to voluntarily dismiss, which totaled twelve (12) pages in length. See ECF No. 64 at ¶ 27 (citing ECF No. 60-2); ECF No. 50. Defendants' counsel spent an additional 13.7 hours drafting, revising, and filing the same document, ECF No. 64 ¶ 28 (citing ECF No. 60-3 at 3–4), as well as 24.1 hours researching, drafting, and filing their motion to dismiss and/or stay the state court action, ECF No. 64 ¶ 29 (citing ECF No. 60-3 at 4–6).

The court agrees with PBI that a reduction in the fee award is necessary, particularly due to five (5) attorneys being employed on this matter, resulting in billing entries for duplicative and unnecessary work. After carefully reviewing Defendants' itemized billing entries and PBI's thorough objections, the court determines that approximately thirty-two (32) percent of the billable hours sought should be excluded due to duplication and unnecessary work. See Fox v. Vice, 536 U.S. 828, 838 (2011) (noting that "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time," insofar as the "essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."). Applying this reduction to the total fee award reduces it to $31,218.12.

### b. Novelty and Difficulty of the Questions Raised

Next, the court considers "the novelty and difficulty of the questions raised" to ensure a reasonable fee award. See Barber, 577 F.2d at 226 n.28. A matter is novel and difficult if there is a complicated procedural posture combined with many issues, numerous claims, and complicated facts in the case, spread over a long period of time. Super Duper, Inc. v. Mattel, Inc., 2009 WL 866463, at *3 (D.S.C. Mar. 31, 2009), aff'd, 382 F. App'x 308 (4th Cir. 2010). Courts in this district have deemed

17

trademark disputes, securities litigation, and lender liability disputes requiring the interpretation of statutes as a matter of first impression to be examples of novel or complex subject matter that justifies a higher fee award. See, e.g., All Am. Title Loans, Inc. v. Title Cash of S.C., Inc., 2007 WL 1464580, *5 (D.S.C. May 17, 2007) (trademarks); Black v. Mantei Assocs., Ltd., 2024 WL 1681314, at *4 (D.S.C. Apr. 18, 2024) (securities litigation); Kerr v. Branch Banking & Trust Co., 2011 WL 1131314, at *3 (D.S.C. Mar. 28, 2011) (lender liability). In this suit, PBI seeks a declaratory judgment that Westchester or Ace has a duty to indemnify and defend PBI pursuant to either the D&O Policy or the PL Policy. Compl. ¶ 17, 31. A declaratory judgment seeking or denying coverage under an insurance policy is not a particularly complex case, favoring a reduction in the fee award. At the same time, this case involves issues relating to professional liability between three sophisticated parties, which counsels against a significant reduction with regard to this factor.

### c. Skill Required to Properly Perform Legal Services Rendered

Next, the court considers the degree of skill required to properly perform the legal services associated with Defendants' fee request. See Barber, 577 F.2d at 226 n.28 PBI's motion to voluntarily dismiss primarily required Defendants to file a response in opposition to that motion and to file a motion to dismiss and/or stay a parallel action in state court. See ECF No. 60-1 ¶ 5. The court finds that neither of these filings require an inordinate amount of skill, favoring a reduction in the fee award.

### d. Customary Fee for Like Work

The court now considers the customary fee for like work, which requires a determination as to whether counsel's rates fall within the "prevailing market rate" in this

district.  See, e.g., Cobranchi v. City of Parkersburg, 2022 WL 5250297, at *2 (S.D.W.

Va. Oct. 6, 2022); see also Barber, 577 F.2d at 226 n.28.  PBI takes issue with

Defendants' failure to provide any argument or evidence indicating that their counsel's

billing rates "are within the range of the prevailing market rates in the community."  ECF

No. 64 ¶ 17.  The court does not fault Defendants for this omission because the court did

not request this specific information and because consideration of such information is not

required when imposing conditions on dismissal pursuant to Rule 41(a)(2).  See, e.g.,

Lang v. Mfrs. & Traders Tr. Co., 274 F.R.D. 175, 185–87 (D. Md. 2011) (considering

only whether work was transferrable to subsequent litigation to determine which fees

could be included as a condition to voluntary dismissal under Rule 41(a)(2)); see also

ECF No. 64 ¶ 14.  And, in any event, Defendants' attorneys billed at hourly rates between

$250 and $400, which is commensurate with (or less than) rates charged in this district.

See, e.g.,  Black, 2024 WL 1681314 (finding that hourly rates of $600 and $700 per hour

were reasonable); Lyman v. Greyhound Lines, Inc., 2022 WL 772752, at *12 (D.S.C.

Mar. 14, 2022) (finding attorney's hourly rate of $275 to be reasonable); W.S. v. Daniels,

2019 WL 5448374, at *4–5 (D.S.C. Oct. 24, 2019) (finding rates ranging from $275 per

hour to $400 per hour to be reasonable), aff'd in part, vacated in part, remanded on other

grounds, 2022 WL 621785 (4th Cir. Mar. 3, 2022); Ellington v. Hayward Baker, Inc.,

2019 WL 4058967, at *4–5 (D.S.C. Aug. 28, 2019) (reducing hourly rates of two

attorneys to $350 and $300 per hour).  As such, counsel's hourly rates do not represent a

basis for a reduction in the fee award.

### e.  Attorneys' Fee Awards in Similar Cases

Finally, the court considers fee awards in similar cases to ensure a reasonable fee condition.  Barber, 577 F.2d at 226 n.28.  In the context of a motion to voluntarily dismiss pursuant to Rule 41(a)(2), the United States District Court for the Southern District of New York imposed payment of attorneys' fees and costs related to "the instant motion practice[.]"  Baldanzi v. WFC Holdings Corp., 2010 WL 125999, at *5 (S.D.N.Y. 2010).  There, plaintiffs' counsel belatedly moved to dismiss pursuant Rule 41(a)(2), claiming a lack of subject-matter jurisdiction based on speculative evidence first brought to the court's attention approximately two years after the suit had been initiated.  Id. at 4.  Counsel had also engaged in dilatory conduct by disregarding discovery deadlines imposed by the court.  Id.  The court notes that PBI's counsel has not engaged in such conduct nor has it supported its jurisdictional claim using speculative evidence.[6]  These distinctions aside, it follows from Baldanzi that it is reasonable to require payment of attorneys' fees and costs associated with opposing a motion to voluntarily dismiss when the motion is premised on a belatedly discovered jurisdictional defect.  See id. at 4.  But, the court will reduce the fee award here to reflect that PBI's counsel acted properly in promptly bringing the jurisdictional defect to the court's attention and otherwise litigating in a professional manner.

Considering this motion to voluntarily dismiss arises from a lack of subject-matter jurisdiction, attorneys' fees awarded pursuant to 28 U.S.C. § 1447(c) resulting from

---

[6] For instance, plaintiffs' counsel in Baldanzi asserted a jurisdictional threshold amount was not met through citation to a Wikipedia article.  2010 WL 125999, at *3 & n.1.

improper removal also provide a useful benchmark to determine the customary fee for like work.

Courts in this district have awarded fees pursuant to Section 1447(c) that are comparable to the instant fee request of $45,909.00. See, e.g., Black, 2024 WL 1681314, at *4 (awarding $58,530.00); Kerr, 2011 WL 1131314, at *3 (awarding $39,424.11). Unlike the instant suit, however, Black and Kerr involved more complex areas of the law. See Black, 2024 WL 1681314, at *4; (securities litigation); Kerr, 2011 WL 1131314, at *3 (lender liability dispute requiring interpretation of statute as matter of first impression). In cases involving less complex subject matter, fee awards have been significantly lower than the amount sought in this suit. See, e.g., LOP Capital LLC v. Cosimo LLC, 2013 WL 1901231, at *3 (D.S.C. May 7, 2013) (awarding $11,812.50 in a suit alleging fraud in a foreclosure action and observing that litigation was "not particularly complex" but plaintiffs did "ha[ve] to contemplate litigation in two courts"); N.C. ex rel. Stein v. Tinted Brew Liquid Co., LLC, 2020 WL 13553831, at *3 (M.D.N.C. Jan. 30, 2020) (awarding $11,428.13 in suit involving allegations of unfair trade practices). As noted above, while this suit does not involve exceedingly difficult subject matter, it is more complex than cases involving fraud and unfair trade practices due to the sophistication of the parties and the type of insurance at issue this litigation. See Compl. ¶¶ 3, 12–14. Accordingly, the court finds that an award between those obtained in Black and Kerr and those obtained in LOP Capital and Stein adequately reflects the complexity of this case and accounts for fee awards obtained in similar cases.

### 2.   Conclusion as to Attorneys' Fees and Costs

The court recognizes that PBI has not acted in bad faith or engaged in jurisdictional gamesmanship in filing its motion to voluntarily dismiss.  See ECF No. 51 at 1, 3.  While this does not fully excuse PBI for failing to ascertain its own citizenship for almost two years or for failing to timely respond to Defendants' request for a stay of the state court action, it does—along with the relevant Barber factors—favor a reduction in the fee award.

Taking into account the relevant Barber factors, the court will further reduce the award to $22,954.50, which is half of the total amount of attorneys' fees requested.  This brings the total fee award to an amount that is between fee awards resulting from successful motions to remand in more complex areas of the law, see, e.g., Black, 2024 WL 1681314, at *4 (awarding $58,530.00); Kerr, 2011 WL 1131314, at *3 (awarding $39,424.11), and fee awards in the remand context arising from less complex matters, see, e.g., LOP Capital, 2013 WL 19011231, at *3 (awarding $11,812.50 in suit involving allegations of fraud); N.C. ex rel. Stein, 2020 WL 13553831, at *3 (awarding $11,428.13 in suit involving allegations of unfair trade practices).

As for costs, Defendants' itemization indicates that they incurred costs of $1,291.21 that will not be transferable to subsequent litigation.  ECF No. 60-5.  An award of such costs "should be imposed as a matter of course in most cases."  Davis, 819 F.2d at 1276.  The total award that will be imposed as condition to voluntary dismissal without prejudice is, thus, $24,245.71, which reflects a fee award of $22,954.50 and an award of costs of $1,291.21.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** PBI's motion to voluntarily dismiss this action and **ORDERS** PBI to pay $24,245.71 of Defendants' costs and fees as a condition to dismissal without prejudice.  Failure to meet this condition will result in dismissal with prejudice.  Defendants' motions for summary judgment, ECF Nos. 37, 38, PBI's motion for an extension time to respond to Defendants' motions for summary judgment, ECF No. 40, PBI's motion to amend the scheduling order, ECF No. 35, and PBI's motion to compel, ECF No. 36, are **DEEMED MOOT**.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 10, 2026**
**Charleston, South Carolina**

23